VIOLA SMITH, Respondent, v. MALLINCKRODT CHEMICAL WORKS, a Corporation, and OTTO L. ROHLFING, Appellants.

St. Louis Court of Appeals.   Opinion Filed April 3, 1923.

1. **PHYSICIANS AND SURGEONS:** Master's Physician: Negligence: Incorrect Diagnosis and Treatment of Eye: Evidence: Sufficient to Establish Case of Negligence. In an action for damages by an employee against her employer and its physician for injuries to her eye, evidence that her employer's physician who undertook to

treat her eye, had been a general practitioner, and was not an oculist, and did not have the proper instruments with which to examine plaintiff's eye, and notwithstanding this, he undertook to make a diagnosis and advise a treatment, although the symptoms were given by plaintiff, which the expert oculists state would indicate a detached retina, yet he advised that it was a mere cold in the eye, and at the end of a week from the first examination, when the eye had not improved but was in a worse condition, he then gave the same diagnosis and advice as to treatment, *held* from such evidence the jury could reasonably conclude that the physician did not use the care and skill which is generally exercised by physicians of ordinary care and skill in the community.

2. MASTER AND SERVANT: Negligence: Respondeat Superior: Master Providing Unskilled Physician: Liability. While an employer is under no obligation to furnish medical services to an employee, yet where he did undertake to do so it was his duty to use reasonable care in selecting a reasonably skilled physician to perform the service.

3. ———: ———: ———: Physician Provided by Master Attending Fellow Employee: Acting Within Scope of Employment. In an action for damages by an employee against her employer and a physician for injuries to her eye due to the negligent diagnosis and treatment by such physician in the employ of her employer, evidence that such physician was employed as a clerk and that the employer took advantage of his medical knowledge and used him as a physician in furnishing to its employees medical attendance in cases of minor injuries, *held* from such evidence the jury were warranted in finding that the physician in treating plaintiff was acting within the scope of his duty as an employee of the defendant company.

4. ———: ———: ———: ———: Master Liable for Physician's Negligence. Where an employee's eye was injured and the employer provided a physician, an employee of plaintiff's employer, who gave a wrong diagnosis and improper treatment to plaintiff's eye, and such physician in accordance with such diagnosis and treatment was acting within the scope of his employment, the employer did not discharge its liability by merely employing a competent doctor, but it must go further and treat in a proper manner the patient attended, and is liable for the negligent acts of such physician, and *held* under the evidence the employer was liable for the negligent acts of its employee physician.

5. ———: Physcians and Surgeons: Negigence: Employee's Eye Injured: Master Providing Unskilled Physician: Causal Connection

**Evidence: Sufficiency.** In an action by an employee against her employer and its physician for injuries to her eye, *held* the evidence was sufficient to warrant the jury in concluding that as a result of improper diagnosis and treatment and plaintiff's reliance thereon, that she was deprived of the chance she had of securing proper treatment, in which event the progress of the condition may have been arrested or she may have been cured, the causal connection, like negligence, is usually a matter of inference from other facts, and in the instant case such was a question for the jury to determine.

6. ———: **Employee's Eye Injured: Damages: Excessive Damages: Verdict of $7500 Not Excessive.** Where the evidence showed that plaintiff's eye was injured, she suffering from what is known as a "detached retina" and was almost blind as a result, a verdict of $7500 was not excessive.

Appeal from the Circuit Court of the City of St. Louis.—

*Hon. Granville Hogan* Judge.

AFFIRMED.

*Nagel & Kirby,* and *Everett Paul Griffin* for appellants.

(1)   The court erred in refusing to give the instruction in the nature of a demurrer to the evidence, offered at the close of the plaintiff's case and renewed at the close of the entire case.   (2)   Even if defendant Rohlfing were negligent and was employed by the defendant as a physician to treat plaintiff, the only basis on which liability could be predicated against the defendant is that the defendant did not use reasonable care in the selection of a physician and there is no such allegation in the petition nor was the case tried on such theory.   A physician is an independent contractor.   Haggerty v. St. Louis, K. & N. W. R. Co., 100 Mo. App. 426 (and cases cited therein); O'Brien v. Cunard S. S. Co., 154 Mass. 272; Union Pacific R. Co. v. Artist, 60 Fed. 365; Myers v. Holborn, 58 N. J. L. 193; Allan v. State S. S. Co., 132 N. Y.

91; McDonald v. Mass. Gen., 120 Mass. 432; McDonald v. Mass. Gen. Hosp., 120 Mass. 432; Secord v. Railroad, 18 Fed. 221; Atch., Top. & Santa Fe R. R. Co. v. Zeiter, 54 Kan. 340; Maine v. Railroad, 109 Iowa, 553; Atl. Coast Line Co. v. Whitney, 56 South. 937; S. F. R. Co. v. Price, 32 Fla. 46. (3) A physician is held to that care and skill which is exercised generally by physicians of ordinary care and skill in his or similar communities. The physician is not chargeable with negligence for failure to use his best skill and ability if he uses the care and skill which is exercised generally by physicians of ordinary care and skill in similar communities. Hailes v. Raines, 146 Mo. App. 241; West v. Martin, 31 Mo. 375; Robertson v. Wenger, 131 Mo. App. 224; Ghere v. Zey, 128 Mo. App. 362. (4) The burden of proof was on the plaintiff to prove (1) that negligent error was made by the physician and (2) that such negligence was the direct cause of the injury. The physician is not an insurer, nor is he liable for honest errors of judgment. Coffey v. Tiffany & Howard, 192 Mo. App. 469; Martin v. Courtney, 175 Minn. 255. (5) The court erred in giving instructions one, two, three, four and five for the plaintiff. (6) The court erred in refusing to give instructions offered by the defendant, to the effect that only nominal damages could be recovered. (7) The court erred in excluding competent evidence offered by the defendant. (8) The court erred in admitting incompetent evidence offered by the plaintiff, over the objections of defendant. (9) The verdict of the jury was excessive. (10) Where an action is brought for damages which are occasioned by one of two causes, for one of which defendant is responsible and for the other not, the plaintiff is fated to failure, as his evidence fails to show that the damages were produced by the former, or, if from the evidence, the probabilities are equally strong that the damages were caused by one as by the other. Fuchs v. St. Louis, 133 Mo. 196; Searles v. Railroad, 101 N. Y. 661; Smart v. Kansas City, 91 Mo. App. 592; Warner v. Rail-

road Co., 178 Mo. 134; Cain v. Lounge Co., 222 Mo. 508; Coranson v. Manufacturing Co., 186 Mo. 307; Epperson v. Postal Telegraph Co., 155 Mo. 382.

*Albert E. Hausman* for respondent.

(1)   Defendant Otto L. Rohlfing was not an independent contractor but was a servant of defendant Mallinckrodt Chemical Works, and the corporation was liable for his negligent performance of the work it called upon him to do.   Croghan v. Schwarzenbach, 79 Atl. 1027; Phillips v. St. Louis & San Francisco R. R. Co., 211 Mo. 419; Jones v. Tri-State Co., 118 Minn. 217.   (2)   The act of defendant Rohlfing in attempting to diagnose the condition of plaintiff's eye, and in advising her with reference to the treatment thereof, was within the scope of his duty as an employee of Mallinckrodt Chemical Works. The scope of a servant's duties may be shown by testimony as to what he has theretofore done at the request of the master or his representatives.   Krueger v. C. & A. R. R., 94 Mo. App. 458;   Charlton v. St. Louis & S. F. R. R., 200 Mo. 413.   (3)   Defendants cannot now contend that defendant Otto L. Rohlfing was an independent contractor, for this was not their theory before the trial court.   Defendants joined issue with plaintiff on the question whether defendant Mallinckrodt Chemical Works had (1) employed defendant Rohlfing to make a diagnosis of plaintiff's eye and advise her with reference to the treatment thereof;   or (2) whether it was part of the duties of Rohlfing as an employee of the defendant to make such diagnosis and furnish such advice.   Defendants' instruction 12.   By this theory defendants are bound on appeal.   Chandler v. Gloyd, 217 Mo. 394; Lange v. Mo. Pac., 208 Mo. 458;   Mercantile Co. v. Burrell, 66 Mo. App. 117; Jennings v. St. Louis, I. M. & S. R. R., 99 Mo. 394; Seiter v. Bischoff, 63 Mo. App. 157; Berkson v. K. C. Cable Co., 114 Mo. 211.   (4)   Furthermore defendant Otto L. Rohlfing was regularly employed by defendant Mallinckrodt Chemical works upon a monthly

salary, devoted all his time to its business and was prima facie its servant in all that he did at its request. The burden was on defendants to prove that he was an independent contractor, if such were the case. Slayton v. West End R. R., 174 Mass. 55; Berry v. Ford, 17 Mo. App. 212; Shamp v. Lambert, 142 Mo. App. 567; Jones v. Tri-State, 118 Minn. 217; Phillips v. St. Louis & S. F. R. R., 211 Mo. 419. (5) · When a master undertakes to care for an injured servant, it becomes his duty to exercise reasonable and ordinary care to care for or advise him properly. Hunicke v. Quarry Co., 262 Mo. 560. (6) Plaintiff made a prima-facie case entitling her to go to the jury when she showed that defendant Rohlfing diagnosed the condition of her eye incorrectly and advised no treatment for it. Granger v. Still, 187 Mo. 197. (7) Plaintiff made a prima-facie case when she showed that defendant Rohlfing failed to heed her statement with reference to the waving clouds of color before her eye, for he then failed to exercise ordinary care to collect data essential to a proper conclusion or diagnosis. This is negligence for which he is liable. 30 Cyc., page 1579; West v. Martin, 31 Mo. 375; Granger v. Still, 187 Mo. 197. (8) Whether defendant Rohlfing used the care and skill required of him by law was properly submitted to the jury under instructions prepared and offered by defendants. The verdict of the jury is conclusive on that issue. Instructions Nos. 9, 10 and 11. (9) The question of proximate cause is for the jury. Though it may be difficult for the jury to determine whether one cause or another is the proximate cause of plaintiff's injury, nevertheless it is their duty to do so. And when they have done so, under proper instructions, an appellate court will not interfere. Defendant's instruction No. 13; Chaplin v. Hicks, 2 K. B. (1911) 786; Scheurer v. Rubber Co., 227 Mo. 359; Seckinger v. Philibert, 129 Mo. 590; Jenkins v. Pennsylvania R. R., 67 N. J. L. 331; Eicholz v. Poe, 217 S. W. 282; Sharp v. Railroad, 213 Mo. 517; McDonald v. Railroad, 219 Mo. 468; Poumeroule v. Cable Co., 167 Mo. App. 533; DeMaet v. Fidelity Storage Co.,

231 Mo. 615; Western Union Telegraph Co. v. Church, 57 L. R. A. 905; Edison v. Metro. Street R. R., 209 S. W. 575. (10) Defendants have waived the question of sufficiency of the evidence to support finding of the jury that the negligence of Rohlfing was the proximate cause of the injury. They submitted that issue to the jury under instructions of their own preparation. Cases cited under point 3.

BIGGS, C.—A negligence case. Plaintiff had a verdict and judgment for $7500. Defendants appeal, claiming there is no liability under the facts, that the acts of the defendants did not proximately cause plaintiff's injuries, and that the judgment is excessive. Error is also assigned because of the instructions, but this is based on the claim of non-liability.

Plaintiff charges that the defendant Rohlfing was an employee of the defendant Mallinckrodt Chemical Works; that on or about March 10, 1915, and while plaintiff was employed in the packing department of the defendant weighing drugs and chemicals and while she was engaged in the discharge of her duties as such employee, she suffered an injury to her left eye; that thereupon said defendant, through its agent and servant Otto L. Rohlfing, attempted to and undertook to make a diagnosis of said eye and did advise plaintiff with reference to the treatment thereof; that plaintiff at that time was a minor under the age of seventeen years, and trusting in the competency and skill of the said agent and servant of defendant to make said diagnosis and to give said advice, submitted thereto and relied thereon for a period of proximately one month; that at the end of said period the sight of said eye was so greatly diminished as to be practically destroyed.

It is further charged that when defendant Mallinckrodt Chemical Works, through said Rohlfing, undertook to make a diagnosis of plaintiff's eye and to advise her with reference to the treatment thereof, it thereupon became the duty of said defendant Chemical Works, through said Rohlfing, and it was the duty of said Rohl-

fing to exercise ordinary care and skill in the diagnosis made and advice given relative to said eye; that the said Chemical Works, through said Rohlfing, did not make a correct and proper diagnosis of the condition of said eye and did not properly, correctly and efficiently advise plaintiff with reference to the treatment of said eye, but did so carelessly, negligently, ignorantly, improperly, unskilfully and wrongfully diagnose the said eye and advise plaintiff with reference to the treatment thereof, that as a result thereof and reliance of plaintiff thereon, the plaintiff's eye was destroyed and the sight thereof lost.

Defendants' answer was a generel denial.

Viewing the evidence in a light favorable to plaintiff, as it is our duty to do in considering the question as to whether or not there was a prima-facie case made, it tended to prove the following facts: Plaintiff at the time of the alleged acts of negligence was sixteen years of age and was employed on the fourth floor of a building in which defendant maintained its packing department, and which was one of some twenty-six buildings, comprising the defendant's entire plant, her duty being at the time to weigh off chemicals and medicines. Her immediate forelady on the floor was Miss Kuennan; the general forelady was Miss Loeb, and the foreman over the entire floor was a Mr. Wolfer. The superintendents of the entire building were Mr. Hund and Mr. Smith. The defendant Rohlfing was a licensed physician, having been admitted to practice in 1896, after graduating from a medical college. For some six years he was attached to the surgical division of St. John's Hospital, and from 1898 to 1902 he was employed as a phyisician at the City Workhouse. He practiced his profession from 1896 to 1906, when he abandoned it because of his health and being dissatisfied with his profession. In 1910 he was employed by the defendant as an order clerk and later became what is known as receiving clerk, his duties being to receive and distribute to the various departments chemicals and medicines used by the defendant. He was

so employed at the time of the accident complained of. As such clerk he was employed on the first floor of the packing department of the building in which plaintiff was working, and within a short time after he was first employed he was called by the foreman and superintendent of the various portions of the plant to attend to employees who may have been hurt or required medical attention, usually cases of minor character, such as cuts and burns. This continued for a period of some three years before the accident complained of by the plaintiff. It appeared that Dr. Rohlfing was called to the packing department on an average of about twice a month and, as stated, this was one of some twenty-six buildings in the entire plant. He was only called by direction of the foreman or superintendent, and a slip of paper was printed and furnished to the foreman of the packing department, and when medical attention was needed by the employees the foreman would fill out the slip and give to the employee, who would see Dr. Rohlfing. No one but the foreman had authority in the packing department to fill out these slips. Under the custom the forelady was required to report any injury to any employee to the foreman. Also it appeared that the superintendent of the plant would seek Dr. Rohlfing's advice as to what should be done with employees who required medical attention; and it appeared that Dr. Rohlfing would sometimes keep the employee under his care and attention until the employee had recovered, which fact was known to the superintendent. At one time he took care of a Mrs. Ruff, who was employed at the plant, and who was a witness for plaintiff, for a period of two weeks. A small office was fitted up on the fourth floor of the packing department of the building, which the employees knew as Dr. Rohlfing's office.

No charge was made by Dr. Rohlfing to any employee for what services he performed, and none was made by the defendant company to the employees. Dr. Rohlfing's

compensation was a fixed monthly salary paid him by the defendant company.

It appeared that in March, 1915, the particular day being not established, the defendant arranged a fire drill at its plant, and in response to an alarm all of the employees of the packing department, including plaintiff, ran to the yard adjoining the building. Plaintiff at the time was engaged in packing medicine, known as cocaine and atrophine. In the said rush to get out of the building on account of the alarm plaintiff got some of the atrophine of cocaine in her left eye. Shortly thereafter and when plaintiff had returned to her work, her forelady noticed the condition of her eye and was told by plaintiff what had occurred, and the forelady thereupon called Mr. Wolfer, the foreman, and was told by Mr. Wolfer to bathe the plaintiff's eye in water, which was done. The foreman thereupon telephoned to the first floor of the packing department to the defendant Dr. Rohlfing to come and look at plaintiff's eye, which he did shortly thereafter. Dr. Rohlfing appeared on the fourth floor and took the plaintiff to what is known as the gold chloride room where he proceeded to examine plaintiff's eye by opening it with his fingers. He thereupon told plaintiff that she had a cold in her eye, and that it would be over in three or four days or maybe a week. Plaintiff at the time told him there was a waving condition of the eye and that she saw black below and yellow waving before the uppert part of her eye, and that the eye was cold and pained her, and that she could hardly see. Several days thereafter plaintiff reported to her forelady that her eye was no better, and the foreman Mr. Wolfer, again sent for Dr. Rohlfing, who did not come at once, but did come on the sixth or seventh day, when he examined plaintiff's eye, and plaintiff again told him about the waving colored conditions that existed. It appeared from plaintiff's evidence that Dr. Rohlfing again told her that it was just a cold and that it may take a month or more for her to get well.

Plaintiff testified that "being that he was a doctor" she took his word. During all of this time plaintiff re-

mained at her work, and thereafter for several weeks, finally her eye pained her to such an extent that in June, 1915, she visited an oculist, Dr. Runde, when it was found that she was suffering from what is known as ''detachment of the retina'' and was almost blind in her left eye as a result.

It appeared from the testimony of expert physicians that the usual treatment for detachment of the retina when it is first discovered is rest for the patient and the use of certain medicine taken internally, and where treatment is promptly given when the affliction first appears, that there is a favorable result in from twenty-five to thirty-five per cent of the cases. The longer the detachment exists before the treatment is given, the probability of a cure or improvement is lessened: The condition is progressive, and unless treatment is given promptly it is considered incurable. Where the treatment is delayed, in from one to two per cent of the cases only are the physicians able to obtain any results. Detached retina means blindness unless the condition is promptly and properly treated when it first appears, and then good results are obtained from twenty-five to thirty-five per cent of the cases. There are also cases of partial detachment, which does not wholly destroy the sight, and which if given prompt treatment, improve or progress of the condition is arrested. The subjective symptoms of detached retina are the appearance of wavy clouds of colored mist before the eye, which are not symptoms of a cold. It was shown by the evidence that the presence of atrophine or cocaine in the eye could not cause detached retina, and that it is usually the result of a blow or shock or it might be caused by fright or near-sightedness.

It appeared from the evidence that the defendant company had a regular physician and that when a serious injury occurred at defendant's plant the patient was either sent to its regular physician or to a hospital. There was no contention that plaintiff was required to submit to treatment by Dr. Rohlfing or any other physician, and that she had the right to employ any one she saw fit.

There was some evidence on behalf of the defendant to the effect that plaintiff had trouble with her eye before the time that Dr. Rohlfing treated her, and by reason of plaintiff's testimony given upon a former trial, she is to a certain extent impeached as to the time when the occurrence took place. With such matters, however, we are not concerned, as the jury's verdict settled the questions of inconsistencies and contradictions in the testimony.

It further appeared from the evidence that the condition that existed in plaintiff's eye, that is the detached retina, could not be discovered except by the use of a paricular instrument used by oculists, and that at the time there was no such instrument at the Chemical Works, and that Dr. Rohlfing during his practice was not an oculist, but a general practitioner.

The theory upon which plaintiff seeks a recovery is that the alleged act of Dr. Rohlfing in unskilfully diagnosing the condition of her eye and in improperly advising her as to its treatment, caused her to refrain from getting prompt and proper treatment, which resulted in the loss or impairment of her eyesight.

Taking plaintiff's evidence as true, there can be no doubt that it was sufficient to establish a case of negligence against defendant Rohlfing. He had been a general practitioner, and was not an oculist, and did not have the proper instruments with which to examine plaintiff's eye. Notwithstanding this, he undertook to make a diagnosis and to advise a treatment, although the symptoms were given by plaintiff, which the expert oculists state would indicate a detached retina. He advised that it was a mere cold in the eye and that at the end of a week from the first examination and when the eye had not improved but was in a worse condition, he then gave the same diagnosis and advice as to treatment. From such evidence the jury could reasonably conclude that Dr. Rohlfing did not use the care and skill which is generally exercised by physicians of ordinary care and skill in the community.

Granting Dr. Rohlfing's negligence, does it follow that the doctrine of *respondeat superior* exists under the circumstances between the defendant company and Dr. Rohlfing, rendering such company liable for his negligent act? There can be no question but that he was employed as a clerk and was in the general employ of the defendant as such, but that on account of his previous medical experience the habit and custom arose, which was known to the company, through which his services as a doctor were used by the company in treating its employees. While he was not employed as a doctor, he was used as such to the knowledge of the company, who through him undertook to furnish medical attendance to its employees. While no charge was made for such service and there was no obligation on the defendant company to furnish such service, it did undertake to do so, and by reason of such fact a duty arose towards such employees. It was certainly the duty of the defendant to use reasonable care in selecting a reasonably skilled physician to perform the service, and for a violation of such duty defendant would be liable. There was no contention here that defendant did not exercise due care in selecting Dr. Rohlfing to perform the service as a physician, but plaintiff seeks to hold the defendant liable for the manner and mode in which Dr. Rohlfing performed such service; in other words, his act of malpractice in improperly diagnosing plaintiff's ailment.

Defendant does not plead that Dr. Rohlfing in performing the service was acting for defendant as an independent contractor, but denies that he was acting for the defendant in any capacity. While it is true he was employed as a clerk at a fixed salary, it is equally true that the defendant took advantage of his medical knowledge and used him as a physician in furnishing to its employees medical attendance in cases of minor injuries. From the stated evidence the jury were warranted in finding that Dr. Rohlfing in performing the acts in question was acting within the scope of his duty as an employee of the defendant company. He had for a long

period of time been performing like services at the request of and with the knowledge of his master.

While we might be justified in saying that the question as to whether Dr. Rohlfing was acting as an independent contractor is not involved because not pleaded, we refrain from ruling the defendant liable on a technical question of pleading. Where plaintiff's evidence disclosed that the character of the service being performed by the employee was such that under the law the doctrine of *respondeat superior* should not be applied for the reason that the master had no control or supervision over such employee in the performance of such service, then it could be said that the plaintiff failed to establish a case.

This case under the evidence must be regarded as one where defendant undertook to furnish medical attendance for its employees in the person of Dr. Rohlfing. Whatever may be the rule of law in regard to the liability of the master under such circumstances, as established by the decisions of other jurisdictions, to which defendant refers, it becomes immaterial in the event our Supreme Court has established a rule in such cases.

In the case of Phillips v. St. Louis & S. F. R. Co., 211 Mo. 419, 111 S. W. 109, 17 L. R. A. (N. S.) 1167, 124 Am. St. Repts. 786, 14 Ann. Cas. 742, the defendant company operated a hospital through an independent association, which the court holds is in effect a department of the railroad, which was supported by contributions from the railroad and also from its employees. The association was in charge of physicians who were in the employ of the railroad. The plaintiff was a patient at the hospital and sought to hold defendant railroad company liable for the negligent acts of the physicians. The court held that the company did not discharge its liability by merely employing competent doctors, but that it must go further and treat in a proper manner the patients received, and it is ruled that the defendant company was liable for the negligent acts of such physicians who were its servants. We are bound by the decision in the Phillips

case, and under that authority we rule that the defendant in this case was liable for he negligent acts of its employee, Dr. Rohlfing.

It is asserted by defendant's counsel that granting Dr. Rohlfing's negligence and defendant's responsibility therefor, there was no evidence in the case to show that Dr. Rohlfing's act in unskilfully diagnosing and improperly treating plaintiff's eye was the proximate cause of her injuries. It is true that Dr. Rohlfing's act did not result in the condition of plaintiff's eye, known as detached retina, but the evidence was sufficient to warrant the jury in concluding that as a result of the improper diagnosis and treatment and plaintiff's reliance thereon, that she was deprived of the chance she had of securing proper treatment, in which event the progress of the condition may have been arrested or she may have been cured. Dr. Runde, the expert oculist, testified that, when prompt and proper treatment is given, cures may be expected in from twenty-five to thirty-five per cent of the cases. Plaintiff's chance of a cure would be improved by reason of her age and good health. The causal connection, like negligence, is usually a matter of inference from other facts, and we hold that under the evidence in the case such was a question for the jury to determine. [Seckinger v. Philibert, 129 Mo. 590, 31 S. W. 957; Eichholz v. Poe, — Mo. —, 217 S. W. 282; Sharp v. Railroad, 213 Mo. 517, 111 S. W. 1154; MacDonald v. Railroad, 219 Mo. 468, 118 S. W. 78; Poumeroule v. Cable Co., 167 Mo. App. 533, 152 S. W. 114.]

The cause was submitted to the jury under proper instructions, the verdict is not excessive, and the judgment should be affirmed.

PER CURIAM:—The foregoing opinion of BIGGS, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Allen, P. J., Becker* and *Daues, JJ.,* concur.