

# SUPREME COURT OF MISSOURI
## en banc

RUTH MICKELS, et al.,               )
                                    )
                    Appellants,     )
                                    )
v.                                  )       No. SC94844
                                    )
RAMAN DANRAD, M.D.,                 )
                                    )
                    Respondent.     )

**APPEAL FROM THE CIRCUIT COURT OF MARION COUNTY**
The Honorable Rachel Bringer Shepherd, Judge

*Opinion issued April 19, 2016*

Ruth Mickels, Joseph Mickels, Jr., Billy Joe Mickels, Brittany Mickels, and Jennifer Unglesbee ("Appellants") brought a wrongful death action against Dr. Raman Danrad ("Dr. Danrad") for negligent failure to diagnose an incurable, terminal brain tumor in Joseph Mickels, Sr. ("Mr. Mickels"). The trial court granted Dr. Danrad's motion for summary judgment and dismissed Appellants' petition on the ground that Appellants could not establish Dr. Danrad's negligence caused Mr. Mickels' death so as to be actionable under section 537.080.1.[1] This Court has jurisdiction under article V, section 10, of the Missouri Constitution. The judgment is vacated, and the case is remanded.

---

[1]  All statutory references are to RSMo 2000.

**Facts**

On December 8, 2008, Mr. Mickels sought medical attention after experiencing numbness, blurred vision, and headaches. He underwent a magnetic resonance imaging ("MRI") procedure. On December 12, 2008, Dr. Danrad reviewed the MRI but made no diagnosis.

On February 17, 2009, Mr. Mickels underwent a CT scan of his brain after arriving at a hospital in an altered mental state. Dr. Danrad again reviewed the results, but this time he diagnosed Mr. Mickels with a brain tumor that was both terminal and incurable. Despite immediate surgery, Mr. Mickels died of this turmor on June 12, 2009.

On June 7, 2012, Appellants filed a wrongful death action against Dr. Danrad. Appellants presented evidence that – even though Mr. Mickels certainly would have died of his brain tumor with or without Dr. Danrad's alleged negligence – he would not have died on June 12, 2009, had the brain tumor been diagnosed following the initial MRI. Mr. Mickels' treating oncologist, Dr. Carl Freter, testified:

> [The tumor] was incurable when it was found and it would have been incurable at the time … [of] the original [MRI] … [however] it is more likely than not that if [the tumor] had been discovered earlier … [Mr. Mickels] would have lived an additional six months on average.

Dr. Danrad moved for summary judgment on the ground that the Appellants had not pleaded and could not prove facts showing that his alleged negligence resulted in Mr. Mickels' death as required by section 537.080.1. The trial court agreed, entered judgment dismissing Appellants' petition, and this appeal followed.

**Standard of Review**

The trial court's summary judgment ruling is reviewed de novo. *Manner v. Schiermeier*, 393 S.W.3d 58, 61-62 (Mo. banc 2013). Summary judgment is appropriate where no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 380 (Mo. banc 1993).

**Analysis**

As alleged, Dr. Danrad's negligence certainly injured Joseph Mickels, Sr., but it just as certainly did not kill him. Instead, Mr. Mickels died of what all parties characterize as an incurable, terminal brain tumor. Because Mr. Mickels' death was not caused by Dr. Danrad's negligence, appellants cannot sue for wrongful death under section 537.080.1. Every state supreme court to address this issue has reached the same conclusion. *See, e.g.*, *Gooding v. Univ. Hosp. Bldg., Inc.*, 445 So. 2d 1015, 1018 (Fla. 1984) (trial court should have directed verdict for defendant in wrongful death case because "a jury could not reasonably find that but for the negligent failure to properly diagnose and treat Mr. Gooding he would not have died"); *Cooper v. Sisters of Charity of Cincinnati, Inc.,* 272 N.E.2d 97, 104 (Ohio 1971) ("In an action for wrongful death, where medical malpractice is alleged as the proximate cause of death, and plaintiff's evidence indicates that a failure to diagnose the injury prevented the patient from an opportunity to be operated on, … the issue of proximate cause can be submitted to a jury only if there is sufficient evidence showing that with proper diagnosis, treatment and surgery the patient probably would have survived.") overruled on other grounds by

- 3 -

*Roberts v. Ohio Permanente Medical Group, Inc.,* 668 N.E. 2d 480 (Ohio 1996);

*Thompson v Anderson*, 252 N.W. 117, 120-21 (Iowa 1934) (affirming directed verdict in a wrongful death suit brought against a physician for failure to diagnose tetanus when the evidence failed to show any probability that the death of the decedent would not have resulted from tetanus, regardless of any negligence or malpractice on the part of the physician).

But this does not mean that Dr. Danrad's negligence is not actionable. It is. Section 537.020 provides: "Causes of action for personal injuries, ***other than those resulting in death***, whether such injuries be to the health or to the person of the injured party, shall not abate by reason of his death …." § 537.020 (emphasis added). Sections 537.020 and 537.080 are two sides of a single coin. *Wollen v. DePaul Health Center*, 828 S.W.2d 681, 685 (Mo. banc 1992) ("survivorship statute and the wrongful death statute are mutually antagonistic").[2] An action for personal injuries that result in death may only be brought under the latter statute, while actions "other than those resulting in death" may be brought under the former. Here, Dr. Danrad's alleged negligence did not cause Mr. Mickels' death, but it surely injured him by depriving him of the opportunity to delay his death for up to six months.[3] Mr. Mickels would have been able to sue

---

[2]  Section 537.020 is referred to as the "survivorship statute" because causes of action other than those resulting in death are said to "survive" the plaintiff's demise and may be brought by the plaintiff's personal representative. Care should be taken not to confuse this judicial shorthand with claims for "lost chance of survival" under *Wollen,* which, coincidentally, "survive" under section 537.020.

[3]  To be clear, Mr. Mickels has no claim for "lost chance of survival" under *Wollen* because all parties concede he could not have survived his brain tumor regardless of whether Dr. Danrad was negligent in reviewing Mr. Mickels' first MRI.

Dr. Danrad for this negligence while he lived, and his personal representative can bring that action under section 537.020 after his death.

Dr. Danrad concedes that this is the approach taken in *Tappan v. Florida Medical Ctr., Inc.*, 488 So. 2d 630, 631 (Fla. Dist. Ct. App. 1986), and *Williams v. Bay Hospital, Inc.,* 471 So. 2d 626 (Fla. Dist. Ct. App. 1985). In *Tappan*, even though the evidence showed that "but for" the defendant's negligence the decedent would have lived six to eight months longer, the court concluded:

> … that no cause of action exists under Florida's Wrongful Death Act because of traditional causation principles, which require proof under the but-for test. [Defendant's] alleged negligence in failing to diagnose the lung cancer was not a cause-in-fact of the death. Mrs. Tappan could not prove that with proper diagnosis and treatment it was 'more likely than not' that Robert Tappan would have survived.

*Tappan*, 488 So. 2d at 631. Instead, the court held that "appellant is entitled to maintain this cause for recovery of such damages as are recoverable in a survivor's action …. [and] should be given an opportunity to file a third amended complaint to state a cause of action under the survival statute." *Id.*

Similarly, in *Williams*, the decedent died of lung cancer that allegedly should have been diagnosed earlier but, even if it had been, decedent's death from this cancer could only have been delayed several months and not prevented. *Williams*, 471 So. 2d at 628. Decedent's personal representative brought a medical malpractice action under the survival statute claiming that "but for" defendant's negligence decedent would have lived longer before succumbing to cancer. The defendant argued that this was – in reality – a

- 5 -

wrongful death claim and, therefore, should be dismissed under *Gooding* because the defendant's negligence did not cause decedent's death. *Williams* rejects this argument:

> Appellee's sole reliance on the *Gooding* case below, and the trial court's citation of *Gooding* and *Beisel, supra,* in the summary final judgment, evidences a misapprehension, we believe, as to the nature of the cause of action before the trial court. The *Gooding* case dealt with an action for wrongful death. Accordingly, the court held in order for the plaintiff to recover it was necessary to prove that the *death* of the decedent "more likely than not" resulted from the defendant's negligence. It seems fairly obvious, however, that where (as here) the cause of action is not based on an allegation that the injury caused *death,* proof that the injury "more likely than not" caused death cannot be required ….
>
> ***
>
> [W]e agree with appellee's strenuous assertions that the medical evidence relied upon below establishes that its alleged negligence did not "more likely than not" ultimately cause Mrs. Williams' death. Appellant freely concedes this fact, so that an action for wrongful death cannot be maintained. Nevertheless, appellant is entitled to maintain this cause for recovery of such damages as are recoverable in a survivor's action. *See, Martin, supra,* at 767. Whether appellant will be able to prove that "more likely than not" appellee's negligence resulted in pain and suffering on the part of Mrs. Williams while she lived, and the damages recoverable for this or other aspects of the claim, are matters yet to be addressed in the trial of this cause.

*Id.* at 629-30.

Dr. Danrad claims that *Tappan* and *Williams* are inapplicable because they were the product of some unique aspect of Florida's survival statute that is not present in section 537.020. This Court disagrees. The Florida survival statute applicable in *Tappan* and *Williams* provided: "No cause of action dies with the person. All causes of action survive and may be commenced, prosecuted, and defended in the name of the person prescribed by law." Fla. Stat. Ann. § 46.021. This statute, which has not been amended since 1967, does not differ materially from section 537.020 for present purposes.

Accordingly, this Court finds the reasoning and conclusions of *Tappan* and *Williams* persuasive.[4]

Allowing the claim for Dr. Danrad's negligence to proceed as a wrongful death action rather than a medical malpractice action that survives under section 537.020 not only is contrary to this Court's precedent and the language of the wrongful death statute, it could have serious and far-reaching consequences. This new element of proof for wrongful death plaintiffs (i.e., that "but for" the defendant's negligence the decedent would not have died on the specific time and date) could thwart meritorious claims in the future. A defendant could argue that, even when his or her negligence caused the decedent's death, some conduct of the decedent (or even a third person) either accelerated or delayed that death and, therefore, that conduct – not the defendant's negligence – was the "but for" cause of the decedent's specific date and time of death. The approach taken in *Tappan* and *Williams* avoids such unintended consequences by properly characterizing this type of claim as a tort claim that survives because the tortfeasor's negligence did not cause the decedent's death. This approach keeps the question of the time and date of the decedent's death out of the causation analysis and confines it to the damages analysis where it belongs.

---

[4] This Court followed similar reasoning and reached a similar result in *Wollen* where the Court held that a lost chance of recovery could not be pursued under the wrongful death statute because cancer – and not the defendant's alleged negligence – caused the decedent's death. Instead, *Wollen* holds that where the defendant's medical malpractice caused personal injuries (i.e., a lost chance of recovery) but not death, that claim survives the decedent's death and may be brought by the personal representative under section 537.020. *Wollen*, 828 S.W.2d at 686.

## Conclusion

Appellants cannot sue for wrongful death under section 537.080.1 because Dr. Danrad's alleged negligence did not cause Mr. Mickels' death. However, the allegations in the petition do state a cause of action for negligence that would have been actionable under section 537.020 if brought by Mr. Mickels' personal representative. Accordingly, the judgment below is vacated, and the case is remanded. *See East v. McMenamy*, 266 S.W.2d 728, 732 (Mo. 1954) (in "furtherance of justice," dismissal is inappropriate "unless the appellate court is convinced that the [allegations] … are such that a recovery cannot be had").

_____
Paul C. Wilson, Judge


Breckenridge, C.J., Fischer and Russell, JJ., concur;
Teitelman, J., dissents in separate opinion filed;
Stith and Draper, JJ., concur in opinion of Teitelman, J.



# SUPREME COURT OF MISSOURI
## en banc

RUTH MICKELS, et al.,         )

         )

         Appellants,      )

         )

v.         )    No. SC94844

         )

RAMAN DANRAD, M.D.,      )

         )

         Respondent.   )

## DISSENTING OPINION

I respectfully dissent. Without analyzing the language of section 537.080, the principal opinion concludes summarily that Appellants have no viable wrongful death action under section 537.080.1[1] because Dr. Danrad's alleged negligence did not cause Mr. Mickels' death. The principal opinion reasons that Dr. Danrad's negligence did not cause Mr. Mickels' death, it simply deprived him of the opportunity to delay his death for up to six months. Left unsaid is the fact that what results from the loss of an opportunity to delay death is death. I would reverse the judgment.

Appellants' wrongful death claim is based on the proposition that, but for Dr. Danrad's failure to diagnose, Mr. Mickels would not have died on June 12, 2009, and he would have lived for several more months. Section 587.080 premises wrongful death

---

[1] All statutory references are to RSMo 2000.

liability on proof that "the death of a person results from any act … which, if death had not ensued, would have entitled such person to recover damages in respect thereof …."  It is obvious that "the death of a person results from" medical negligence when the decedent would not have died "but for" the alleged negligence.  It is also true, however, that "the death of a person results from" medical negligence when a terminally ill person would not have died prematurely but for the alleged negligence.  In both cases, the death "results from" negligence in that the death would not have occurred when it did absent the alleged medical negligence.

The principal opinion's summary conclusion that Mr. Mickels' death was not caused by Dr. Danrad's negligence is far from obvious.  First, the plain language of section 537.080 authorizes wrongful death actions when death "results from" negligence.  The statute does not say that a wrongful death action will lie only if the sole and exclusive cause of the death is the alleged negligence.  There is nothing in the plain language of section 537.080 that compels the conclusion that a physician who negligently causes the premature death of a patient is immunized from wrongful death liability because, by a stroke of perverse luck, the patient also suffers from a terminal illness.

Second, the principal opinion's conclusion that a terminally ill person can never suffer a wrongful death is not consistent with the purpose of section 537.080, which is to provide compensation to bereaved plaintiffs for their loss, to ensure that tortfeasors pay for the consequences of their actions, and to deter negligent acts that may lead to death.  *O'Grady v. Brown*, 654 S.W.2d 904, 909 (Mo. banc 1983).  Immunizing tortfeasors from

wrongful death liability when they kill the terminally ill is not compelled by the plain language of the statute and certainly does not advance the statutory purposes.

Finally, the principal opinion's reliance on cases from Florida, Ohio and Iowa decided between 30 and 83 years ago should not be conclusive with respect to interpretation of the language in Missouri's wrongful death statute.

I would reverse the judgment and remand the case.

 

_____

Richard B. Teitelman, Judge