Ralph V. MORTON, Sr. and Delores Morton, Individually, Appellants,

v.

Norman MUTCHNICK, M.D., Warran Hargett, M.D. and Wynne Stubbs, M.D., Menorah Medical Center & Surgical Services, P.C., Respondents.

No. WD 49842.

Missouri Court of Appeals, Western District.

May 16, 1995.

As Modified June 22, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 27, 1995.

Application to Transfer Denied Sept. 19, 1995.

J. Scott Bertram, Kansas City, for appellants.

Kenneth Reilley, Overland Park, KS, for respondent Mutchnick.

Thomas W. Wagstaff, Kansas City, for respondents Hargett and Stuggs.

M. Jay Day, Kansas City, for respondent Menorah.

Before KENNEDY, P.J., and LOWENSTEIN and HANNA, JJ.

HANNA, Judge.

The appellants (plaintiffs below), Ralph and Delores Morton, are the parents of Ralph Morton, Jr. The parents filed this action in the Circuit Court of Jackson County, Missouri, on March 9, 1993, for the wrongful death (§ 537.080, RSMo Supp.1993) and lost chance of recovery stemming from the death of their son. Mr. Morton died from bilateral pneumonia secondary to AIDS.

Counts I and II of plaintiffs' second amended petition sought damages for the wrongful death of their son and Count III for his lost chance of recovery. The defendants filed a Joint Motion for Judgment on the Pleadings. The trial court held several hearings on the defendants' motions and on July 29, 1994, sustained the defendants' joint motions for judgment. The plaintiffs appealed.

■ A motion for judgment on the pleadings admits the truth of all well-pleaded facts in the petition. *Angelo v. City of Hazelwood,* 810 S.W.2d 706, 707 (Mo.App.1991). Those facts are as follows.

Mr. Morton received health care services from the defendants from June 10, 1989, until he died on March 9, 1990. He first went to Menorah Health Services (Menorah) for evaluation and treatment of a sore on the upper left side of his back on June 10, 1989. He was seen, diagnosed and treated by Drs. Mutchnick, Stubbs and Hargett. The sore was diagnosed as an infected sebaceous cyst which was drained and later, antibiotics were prescribed. According to Dr. Mutchnick's office records, the sore did not heal adequately until January 27, 1990.

Mr. Morton returned to Menorah on February 14, 1990, with complaints of fatigue, dry cough, and loss of appetite. The condition was originally diagnosed as probable influenza. The patient was told to return if the symptoms persisted. On a return visit, medication was prescribed. On February 16, he was examined by Dr. Hargett, who recorded that the patient was suffering from dyspnea so severe that "even short walks and blowing his nose" left him physically exhausted. He was seen again on February 27, continuing to suffer from persistent dyspnea and hypocalcemia. The Morton family consulted with Dr. Hargett and the plaintiffs' petition alleges that they requested that their son be hospitalized, but the doctor refused. On March 2, 1990, Mr. Morton returned to Menorah, and during the course of the visit, he collapsed and was admitted to Menorah. The admission summary indicates that "consideration was given to the possibility of an AIDS-type syndrome." The patient's condition deteriorated rapidly during his one week stay at the hospital, and he died from respiratory distress secondary to AIDS on March 9, 1990.

Counts I and II are for the wrongful death of Mr. Morton. It is alleged that the defendants negligently failed to diagnose and treat Mr. Morton for AIDS and, as a result, his pre-existing condition worsened and his death was hastened. The petition alleges that but for the professional negligence of the defendants, Mr. Morton would have lived longer. Count III is an alternative count that states that as a direct result of the defendants' professional negligence, Mr. Morton suffered a lost chance of recovery because he was deprived of the opportunity to undergo therapeutic techniques designed to postpone the onset of secondary infections to AIDS, and because the defendants failed to adequately treat him for his positive HIV status.

The Missouri legislature has provided a cause of action for the wrongful death of a person "[w]henever the death of a person results from any act, conduct, occurrence, transaction, or circumstance which, if death had not ensued, would have entitled such

person to recover damages in respect thereof...." § 537.080, RSMo Supp.1993.

A motion for judgment on the pleadings should be sustained if, from the face of the pleadings, the moving party is entitled to judgment as a matter of law. *Angelo,* 810 S.W.2d at 707. In order to assert a viable claim for wrongful death, the plaintiffs must allege facts that show Mr. Morton's death was caused by defendants' negligence. A pleading that recites legal conclusions will not establish a valid claim. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 379, 383 (Mo. banc 1993). In Missouri, causation is an essential element of a cause of action for wrongful death. *See, e.g., Honey v. Barnes Hosp.,* 708 S.W.2d 686, 692 (Mo.App. 1986). Plaintiffs' claim for wrongful death in Counts I and II states facts demonstrating that, but for the defendants' failure to diagnose Mr. Morton's AIDS condition, the deceased would have lived longer. The Missouri Supreme Court discussed this issue in *Wollen v. DePaul Health Ctr.,* 828 S.W.2d 681 (Mo. banc 1992).

In *Wollen,* the deceased's spouse alleged that the defendants failed to diagnose her husband's gastric cancer, and given appropriate treatment he would have had a thirty percent chance of a cure and survival. The trial court dismissed Mrs. Wollen's wrongful death claim because the petition failed to plead a causal connection between the defendants' negligence and Mr. Wollen's death. *Id.* at 682. The court examined failure to diagnose cases and identified three possibilities with respect to proof of causation: "two of which involve 'reasonable medical certainty,' and a third that does not." *Id.* The first possibility identified was the "but for" causation, in which the patient seeks a diagnosis of his disease, for which a cure is available in the overwhelming majority of cases. The second possibility was the opposite—that there is no known cure for the disease and medical science, at best, can only extend the patient's life for a short time. The third possibility involved those cases in which medical science has a treatment that works in a large number of cases and fails in a large number of cases. In these cases there is a

real chance that the patient will survive and a real chance that the patient will die from the disease, even if properly diagnosed. Therefore, it is impossible for the medical expert to state with "reasonable medical certainty" the effect of the failure to diagnose, except that the failure to diagnose eliminated whatever chance the patient would have had. *Id.* The court concluded that when all of the defendants' negligence acts are taken together, their negligence *might* have contributed to Mr. Wollen's death, since he only had a thirty percent chance of surviving the cancer even if it had been diagnosed earlier. *Id.* at 683. The court held that the facts did not state a cause of action for Mr. Wollen's death. *Id.*

The plaintiffs analogize the facts of this case to the criminal defendant who murders a terminally ill patient. They contend that this does not excuse the criminal defendant from his wrongdoing simply because the patient would have died eventually. Of course, one who murders is, by definition, the competent force that brings about the death. An incurable disease does not prevent one from maintaining a successful cause of action for damages. There are facts, different from those in this case, which can satisfy the causation requirement.

The point was demonstrated in *Kilmer v. Browning,* 806 S.W.2d 75 (Mo.App.1991). The decedent died in his apartment from carbon monoxide poisoning. *Id.* at 78. The plaintiffs filed a wrongful death action against the landlord and the gas company on behalf of the decedent, who was HIV positive at the time of his death. *Id.* at 81. The court held that a cause of action had been stated and considered the decedent's HIV status relevant only as to the amount of damages recoverable against the defendants. *Id.* at 82.

The harm that the plaintiffs claim was suffered was not the loss of life, but rather, a shortening of life. The plaintiffs cannot prove that the patient's death, based on reasonable medical or scientific certainty, resulted from the defendants' failure to diagnose his pre-existing AIDS condition. To prove a cause of action under the wrongful death statute, the plaintiffs must plead and prove

that the death of the decedent resulted from the defendants' negligence. It is not the failure to diagnose Mr. Morton's condition that caused his death, his death resulted from pre-existing disease. There are no facts showing a causal connection between the defendants' negligence and Mr. Morton's death because the facts alleged do not state that *but for* the defendants' negligence Mr. Morton would not have died. *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852 (Mo. banc 1993).

Next, the plaintiffs contend that they have a claim for lost chance of recovery. The defendants argue that the plaintiffs have no cause of action for lost chance of recovery because the cause of action alleged in plaintiffs' petition is not one recognized by Missouri, and also, lost chance of recovery must be brought within two years of the date of death and the plaintiffs' lawsuit was filed three years after Mr. Morton's death. Because the first point is dispositive, we do not address the statute of limitations issue.[1]

 The *Wollen* decision recognized a cause of action for lost chance of recovery, *Wollen*, 828 S.W.2d at 683–85, and the plaintiffs argue that this cause of action fits what has been pleaded in Count III of their petition. Mr. Wollen had a disease that was described as curable in thirty percent of the cases. Unfortunately, Mr. Morton suffered from a disease which currently has no known cure. This fact puts his claim into the second category described in *Wollen*.

Describing the second category, the court included diseases for which there is no known cure and which "[m]edical science can only, at best, extend the patient's life a short time." *Id.* at 682. This situation involves any disease which is fatal in the overwhelming majority of cases, although the court acknowledged a small number of spontaneous remissions or cures. *Id.* The court made it clear that such an action will be permitted only if the facts fall into the third category and not the second one, by stating:

This action will be limited to those cases in which the chance of recovery lost was sizeable enough to be material, which must be so found by the jury. In the event statistics constitute relevant evidence, the lost chance must also be statistically significant within the applicable statistical standards.

*Id.* at 685 n. 3.

It appears that plaintiffs are arguing that they should be allowed to recover damages for Mr. Morton's lost chance to have his life extended by an unknown period of time until his ultimate death as a result of AIDS-related illness. Unfortunately, Missouri does not recognize such a cause of action. We conclude that the pleaded facts are not sufficient to state a cause of action under Missouri law.

Judgment of dismissal of the plaintiffs' second amended petition is affirmed.

LOWENSTEIN, J. concurs.

KENNEDY, P.J., files separate dissenting opinion.

KENNEDY, Presiding Judge, dissenting.

I am unable to agree with my colleagues that *Wollen v. DePaul Health Center*, 828 S.W.2d 681 (Mo. banc 1992) forecloses a wrongful death remedy for the survivors of the decedent.

It is to be noted that this is a judgment on the pleadings. We must therefore accept as true the allegations of plaintiffs' petition. The petition says:

32. As a *direct* and *proximate result* of the professional carelessness and negligence of the Defendants, and each of them, Decedent Ralph V. Morton, Jr.'s preexisting condition of AIDS was aggravated and allowed to worsen, his death was hastened, and said *professional carelessness* and *negligence* was a substantial factor that *directly caused* his premature death from bilateral pneumonia probably due to pneumocystis carinii and renal failure; and *but for the professional carelessness* and *negli-*

---

1. Mr. Morton died on March 9, 1990. The plaintiffs filed their petition on March 9, 1993. Section 516.105, RSMo 1986, sets the statute of limitations against all health care providers at two years. Wollen does not limit the cause of action for last chance of recovery to wrongful death action. *Id* at 684 ("damages can only be expressed by multiplying the value of a lost life or *limb* by the change of recovery lost. . . .") (Emphasis added).

*gence* of the defendants, and each of them, decedent Ralph V. Morton, Jr. would have lived *substantially longer*, therefore, plaintiff Ralph V. Morton, Sr., and plaintiff Delores Morton have sustained the following damages:

(a) They have lost the aid, companionship, instruction, guidance, counsel, comfort, affection, love and support of their son for a *substantial period of time*; and,

(b) They incurred expenses for their son's funeral.

(Emphasis ours.)

The petition further alleges, in a separate count:

2. As a *direct and proximate result* of the *professional carelessness* and *negligence* of the Defendants, and each of them, Plaintiff's decedent, Ralph V. Morton, Jr., sustained the following serious, progressive, and permanent injuries prior to his death:

(a) He suffered tremendous pain of body and mind, and anxiety, nervousness and sleeplessness;

(b) He sustained substantial medical bills; and

(c) He underwent a great deal of physical and mental pain and suffering. (Emphasis ours.)

Contrast these allegations with the *Wollen* petition, where it was alleged that (using the Court's language, 828 S.W.2d at 682):

"If Mr. Wollen had been correctly diagnosed, and given appropriate treatment, he would have 'had a thirty percent (30%) chance of survival and cure.' "

The court went ahead to say, 828 S.W.2d at 683:

"In this case, appellant can only allege that ... the negligence of the respondents *might* have contributed to the death of Mr. Wollen. In these circumstances, the petition fails to allege facts that indicate that respondents' negligence was a substantial factor in causing the death of Mr. Wollen."

People with AIDS are known to live comfortably and productively with the HIV virus for many years. If the negligent failure to diagnose AIDS results in death's coming on apace, and unresisted, and robs the patient of many years of life—not merely a brief extension of life—it must surely be said that the early death resulted from the alleged negligence.

We do not know what the plaintiffs might have proved. We cannot judicially know what the decedent's prospects were at the time his AIDS should have been identified and was not. That can be shown only by expert testimony.

To use a more familiar example, one can imagine a person stricken with a fatal cancer. However, remission of the disease can be medically induced, and the patient restored to a condition of clinical health, which normally continues over a period of months or years with maintenance therapy, even though the underlying condition continues uncured and ultimately causes death. In such a case, the negligent failure to timely diagnose the cancer, by reason of which the door is closed to medically induced remission, and by reason of which the patient quickly declines and dies, is a cause of the patient's death. I do not think *Wollen* deals with this kind of case.

I would reverse and remand for further proceedings. The evidence upon a full record might bring the case within the *Wollen* case. But it might not.