# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2740
_____

| | | |
|---|---|---|
| Ross W. Graham; Julie Graham, | * | |
| | * | |
| Plaintiffs - Appellants, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the Western |
| Ozark Mountain Sightseeing, Inc.; | * | District of Missouri. |
| Joe D. Ainsworth; Rudolph E. Smutny, | * | |
| | * | |
| Defendants - Appellees. | * | |

_____

Submitted:  January 15, 1999

Filed:  May 28, 1999
_____

Before LOKEN, HANSEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
_____

LOKEN, Circuit Judge.

Juanita Graham was injured in an accident involving an Ozark Mountain Sightseeing bus.  She later suffered a heart attack and died.  Her surviving husband and daughter, Oklahoma residents Ross and Julie Graham, brought this diversity wrongful death action against Ozark Mountain and the bus drivers.  The district court[1] granted

_____

[1]The HONORABLE RUSSELL G. CLARK, Senior Judge of the United States District Court for the Western Division of Missouri.

summary judgment for defendants because the Grahams lacked evidence that the bus accident directly caused Juanita's death. The Grahams appeal, arguing their medical experts' testimony created a genuine fact dispute regarding causation. We affirm.

On June 8, 1995, Juanita Graham was walking through a parking lot in Branson, Missouri, when an empty Ozark Mountain bus rolled down a hill and struck several parked cars, knocking one of the cars into her. She suffered serious injuries, including brain damage. On May 21, 1996, Graham had a heart attack and died. Graham had multiple risks for heart failure, including diabetes, hypertension, three pre-accident heart attacks, and a smoking habit. One of her treating physicians, Dr. Joseph Knapik, completed Juanita's Oklahoma death certificate, listing cardiac arrest as the cause of death, noting congestive heart failure and diabetes mellitus as contributing causes, and reciting that more than a year elapsed between the onset of the conditions causing death and Juanita's death.[2]

The Grahams commenced this wrongful death action under Mo. Rev. Stat. § 537.080, contending the June 1995 accident impaired Juanita's mental capacity and ability to manage her preexisting conditions, which in turn caused her heart attack and death. The district court granted defendants' motion for summary judgment, concluding the Grahams' evidence could not meet the Missouri causation standard. This appeal followed. We review the grant of summary judgment de novo, viewing the evidence most favorably to the non-moving party and affirming if there is no genuine fact dispute and the moving party is entitled to judgment as a matter of law. See Chism v. W.R. Grace & Co., 158 F.3d 988, 990 (8th Cir. 1998). We review the district

---

[2]Under Oklahoma law, if a doctor believes that death was caused by an injury, he should certify it to the medical examiner and should not sign the death certificate. Dr. Knapik signed Juanita Graham's death certificate and did not certify her death to the medical examiner.

-2-

court's interpretation of Missouri law de novo. <u>See</u> <u>Bryan v. Norfolk & W. Ry.</u>, 154 F.3d 899, 901 (8th Cir. 1998), <u>cert. dismissed</u>, 119 S. Ct. 921 (1999).

To recover for wrongful death under Missouri law, the Grahams must prove that defendants' negligence was a direct cause of Juanita's death. <u>See</u> <u>Morton v. Mutchnick</u>, 904 S.W.2d 14, 16 (Mo. App. 1995). This requires, at a minimum, a showing of "but-for" causation, that is, causation in fact. <u>See</u> <u>Callahan v. Cardinal Glennon Hosp.</u>, 863 S.W.2d 852, 862-63 (Mo. banc 1993). Because the Grahams rely on medical experts, the doctors must testify to a reasonable medical certainty that but for defendants' negligence Juanita's death would not have occurred. Expert testimony that defendants "probably" or "likely" caused the harm is insufficient unless there is additional evidence of causation or it is clear from the context that the doctor intended to express a definite opinion. <u>See</u> <u>Kiger v. Terminal R.R. Ass'n</u>, 311 S.W.2d 5, 14 (Mo. 1958); <u>Pfeffer v. Kerr</u>, 693 S.W.2d 296, 300-03 (Mo. App. 1985); <u>Bertram v. Wunning</u>, 385 S.W.2d 803, 807 (Mo. App. 1965).

The Grahams rely on the deposition testimony of Juanita's two treating physicians to establish the causal link between the June 1995 accident and her fatal heart attack. Dr. Knapik testified that Graham's head injury caused a "failure to thrive," in that she would not thereafter assist in her therapy and developed behavioral problems which adversely affected her condition. However, when asked if he could testify to a reasonable degree of medical certainty that the "failure to thrive" caused Graham's death, he responded: "I wish I had a crystal ball and could answer that question. I will tell you my personal professional opinion. I think that if she wouldn't have sustained the injury that she sustained, she'd probably be alive today. . . . I don't think the failure to thrive and the heart attack are something we can correlate."

Dr. David Shepherd, another treating physician, was deposed as an expert for the Grahams. When asked if he could testify to a reasonable medical certainty that but for the accident, Juanita would have survived, Dr. Shepherd answered: "My opinion

-3-

is that the accident and her affective disorder adversely affected her ability to comply with medical recommendations, with diet, with medication, with appropriate adjustments in her lifestyle and, therefore, had an impact." If she had had full use of her mental faculties, Dr. Shepherd thought Juanita would have complied better with medical regimen, which would have delayed her death. However, later in the deposition, he hedged:

> I don't know whether Mrs. Graham would still be alive today. She had multiple [heart attack] risk factors. But I do think that her injury adversely affected her outcome because she was not able to comply with medical management. But I don't know whether she still would have been alive today or not. I don't think that's predictable.

Thus, neither doctor was willing to testify that Juanita's accident was a direct cause of her death. Dr. Knapik said she would "probably" be alive if not for the accident, and Dr. Shepherd opined that the accident "had an impact." However, neither physician would directly relate the bus accident to Juanita's death, and neither could, with any degree of medical certainty, sufficiently correlate the effects of the accident with what did directly cause her death, a fourth heart attack. We agree with the district court this medical evidence is insufficient to satisfy Missouri's causation standard. As the Grahams submitted no other causation evidence, the court properly granted defendants' motion for summary judgment dismissing the wrongful death claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The Grahams also argue the district court abused its discretion in denying their post-judgment motion to reinstate a claim for damages for Juanita's personal injuries. See Roudybush v. Zabel, 813 F.2d 173, 178 (8th Cir. 1987) (standard of review). Under Missouri law, an action for personal injuries survives the death of the victim but may only be brought by the personal representative of the victim's estate. See Mo. Rev. Stat. § 537.020; State v. Steelman, 897 S.W.2d 202, 203 (Mo. App. 1995). Here, it is debatable whether the complaint even alleged a separate claim for Juanita's injuries

because the suit was brought only in Ross Graham's individual capacity and not as representative of her estate, it was brought under the Missouri wrongful death statute, and it asked for all the damages authorized under that statute. Moreover, Ross Graham was appointed personal representative in Oklahoma. To bring an action in Missouri, a foreign personal representative must first register with a Missouri probate court, and Ross Graham did not do so. See Mo. Rev. Stat. §§ 473.676-.677; In re Estate of Widmeyer, 741 S.W.2d 758, 760 (Mo. App. 1987). In these circumstances, the district court did not abuse its discretion in denying the post-judgment motion.

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.