Karen **SUPER**, et al., Appellants,

v.

Dr. David S. **WHITE**, et al., Respondents.

No. WD 57356.

Missouri Court of Appeals, Western District.

May 23, 2000.

512

Brian J. Klopfenstein, Kearney, for appellants.

Timothy S. Frets, Shelley I. Ericsson, Michael Shaffer, Kansas City, for respondents.

Before: EDWIN H. SMITH, P.J., and HOWARD and HOLLIGER, JJ.

EDWIN H. SMITH, Presiding Judge.

Karen Super and Jacqueline Dawson appeal the summary judgment of the Jackson County Circuit Court for the respondents, Dr. David White and Correctional Medical Services, Inc. (CMS), on the appellants' claims for damages for the wrongful death of Joseph Super (the decedent), who died on June 16, 1995, as a result of cirrhosis of the liver.[1]

The appellants raise two points on appeal, Point I dealing with their claims against Dr. White and Point II dealing with their claims against CMS. In both points, they claim that the trial court erred in granting summary judgment against them because there was a genuine dispute of material facts as to requisite elements of their claims and that the respondents were

not entitled to judgment as a matter of law.

We affirm.

### Facts

CMS, a Missouri corporation authorized to do and doing business in Missouri, provided medical care and treatment for inmates incarcerated in the Missouri Department of Corrections (DOC) between November 1994 and January 1995. Dr. White was employed as a physician for CMS, working at the Central Missouri Correctional Center (CMCC) in Jefferson City. In November of 1994, while he was incarcerated at CMCC on his convictions for possession and manufacture of marijuana, the decedent tested positive for tuberculosis, a highly contagious airborne disease. As a result, on December 2, 1994, Dr. White, without examining the decedent, initiated a prophylactic antitubercular therapy for him, which included the taking of isoniazid (INH) and vitamin B–6 tablets for six months.

On December 24, 1994, the decedent was taken to the medical unit on an emergency basis complaining of right-side stomach pain and cramping of the legs. He was also running a temperature of 104 degrees. On December 29, 1994, the decedent was examined by Dr. White. The decedent complained to Dr. White that he was experiencing right-side stomach pain and coughing, which made the pain worse. Dr. White determined that the complaints were due to "gas pain." No blood tests were taken at the time.

The decedent was assigned to the Kansas City Honor Center on January 25, 1995. Prior to his release to the honor center, an appointment was scheduled for him at the Kansas City Health Depart-

---

1. Dr. Ashok Patel, one of the defendants below, was also named as a respondent in the notice of appeal. However, the appellants do not raise any claims of error in their points relied on as to the trial court's grant of summary judgment on their wrongful death claims against him. As such, we do not address whether the trial court erred in granting summary judgment to Dr. Patel on the appellants' wrongful death claims against him. Missouri Rule of Civil Procedure 84.04 (1999); *Coleman v. Gilyard,* 969 S.W.2d 271, 274 (Mo.App.1998).

ment on February 13, 1995. On two occasions, February 3, 1995, and April 27, 1995, the decedent received prescriptions for medications, including INH, from Dr. Patel of the Swope Parkway Health Center.

After his release from the honor center in April of 1995, the decedent returned home to Columbia, Missouri. He continued to experience problems, including a loss of energy, prompting him to see Dr. Marvin Mack at the Walk–In Medical Clinic in Columbia on June 2, 1995, and June 5, 1995. On June 5, 1995, the decedent was directed by Dr. Mack to admit himself to the hospital at the University of Missouri. He admitted himself on June 5 and remained there until his death on June 16, 1995. An autopsy was performed, which indicated that he died of cirrhosis of the liver secondary to chronic active Hepatitis C.

On November 7, 1996, the decedent's wife at the time of his death, Karen Super, and his daughter, Jacqueline Dawson, the appellants, filed their petition for damages for wrongful death, under § 537.080,[2] against CMS, Dr. White, Dr. Patel, and Model Cities Health Corporation (d/b/a Swope Parkway Health Center), alleging, *inter alia*, that they were negligent in the diagnosis, treatment and care of the decedent, after he had tested positive for tuberculosis, and that such negligence caused or contributed to cause his death on June 16, 1995.

On September 28, 1998, CMS and Dr. White filed their motions for summary judgment as to the claims against them, alleging that there was no genuine dispute as to material facts and that they were entitled to judgment as a matter of law. On October 7, 1998, Dr. Patel also filed a motion for summary judgment. More than four months later, on February 18, 1999, the trial court sustained the motions for summary judgment.

The appellants filed a "Motion To Reconsider The Court's Finding Of Summary Judgment In Favor Of Defendants Dr. White And Correctional Medical Services With Suggestions" on April 2, 1999, alleging that, since the filing of the motion for summary judgment by the respondents on September 28, 1998, discovery had continued in the case and produced more information favorable to their claims. That same day, the appellants also filed a "Motion To Reconsider The Court's Finding of Summary Judgment In Favor of Defendant Dr. Patel With Suggestions." On May 17, 1999, the trial court overruled the appellants' motions to reconsider as to CMS, Dr. White and Dr. Patel and, pursuant to Rule 74.01(b),[3] certified that "there is no just reason for delay" as to its summary judgments.

This appeal follows.

### Standard of Review

Our review is essentially *de novo*. The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.

*ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. *banc* 1993) (citation omitted). Summary judgment will be upheld on appeal if: (1) there is no genuine dispute of material fact; and (2) the movant is entitled to judgment as a matter of law. *Id.* at 380.

When considering appeals from summary judgments, the [c]ourt will review the record in the light most favorable to the party against whom judgment was entered. Facts set forth by affidavit or

---

**2.** All statutory references are to RSMo 1994, unless otherwise indicated.

**3.** All rule references are to the Missouri Rules of Civil Procedure (1999), unless otherwise indicated.

otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. We accord the non-movant the benefit of all reasonable inferences from the record.

*Id.* at 376 (citations omitted).

## I.

The appellants raise two points on appeal, Point I dealing with their claims against Dr. White and Point II dealing with their claims against CMS. In both points, they claim that the trial court erred in granting summary judgment against them because there was a genuine dispute of material facts and the respondents were not entitled to judgment as a matter of law. In Counts I–IV of their eight-count wrongful death petition, filed pursuant to § 537.080, the appellants alleged, *inter alia,* that Dr. White and CMS were negligent in various respects in their diagnosis, care and treatment of the decedent after he had tested positive for tuberculosis, which negligence caused or contributed to cause his death. In their various complaints, they asserted that the respondents were negligent in administering the drug, INH, in response to the positive test of the decedent for tuberculosis. Because both points can be resolved, for the reasons discussed, *infra,* on the same issue, whether the respondents' actions or inactions in administering INH caused or contributed to cause the decedent's death, we review them together.

Under Rule 74.04, to be entitled to summary judgment, the respondents, as the movants, were required to show that: (1) there was no genuine dispute as to the material facts on which they relied for summary judgment; and (2) on these undisputed facts, they were entitled to judgment as a matter of law. Rule 74.04; *ITT Commercial Fin. Corp.,* 854 S.W.2d at 380–81; *Rhodelander v. Liberty Christian Fellowship,* 6 S.W.3d 402, 405 (Mo.App. 1999). If the movant for summary judgment is a defending party, as in the present case, a *prima facie* case for summary judgment may be established by one or more of the following means: (1) showing undisputed facts that negate any one of the claimants' required proof elements; (2) showing that the claimants, after an adequate period of discovery, have not produced and would not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of the claimants' required proof elements; or (3) showing that there is no genuine dispute as to the existence of each of the facts necessary to support an affirmative defense properly pleaded by the movant. *ITT Commercial Fin. Corp.,* 854 S.W.2d at 381. "Regardless of which of these three means is employed by the 'defending party,' each establishes a right to judgment as a matter of law. Where the facts underlying this right to judgment are beyond dispute, summary judgment is proper." *Id.*

The appellants' wrongful death actions are governed by § 537.080, which provides, in pertinent part:

1. Whenever the death of a person results from any act, conduct, occurrence, transaction, or circumstance which, if death had not ensued, would have entitled such person to recover damages in respect thereof, the person or party who, or the corporation which, would have been liable if death had not ensued shall be liable in an action for damages, notwithstanding the death of the person injured.

. . .

Under this statute, the right to sue for wrongful death is conditioned on the fact that the decedent could have maintained an action for damages for the injuries sustained had he or she survived. *Campbell v. Callow,* 876 S.W.2d 25, 28 (Mo.App. 1994). Hence, for the appellants to succeed on their wrongful death actions against the respondents, based on their claims of medical malpractice, they were required to show the requisite elements of a medical malpractice claim. *See Brickey v. Concerned Care of the Midwest, Inc.,* 988 S.W.2d 592, 596 (Mo.App.1999) (*quoting Klaus v. Deen,* 883 S.W.2d 904, 907

(Mo.App.1994)) (setting forth the three elements of a medical malpractice claim: " '(1) proof that defendant's act or omission failed to meet the requisite standard of care; (2) proof that the act or omission was performed negligently; and (3) proof of a causal connection between the act or omission and the injury sustained by the plaintiff' "). In addition, of course, they were required to show that the respondents' alleged negligence caused the decedent's death. § 537.080; *Morton v. Mutchnick,* 904 S.W.2d 14, 16 (Mo.App.1995).

> [I]n wrongful death actions, plaintiffs must establish that, "but for" the actions or inaction of the defendant, the decedent would not have died. This requirement exists because the term *but for* refers to an absolute minimum for causation; it is merely causation in fact.

*Baker v. Guzon,* 950 S.W.2d 635, 644 (Mo. App.1997) (*citing Callahan v. Cardinal Glennon Hosp.,* 863 S.W.2d 852, 862 (Mo. banc 1993)).

■ Proof of causation requires expert medical testimony "[w]hen there is a sophisticated injury, requiring surgical intervention or other highly scientific technique for diagnosis." *Brickey,* 988 S.W.2d at 596. As such, expert medical testimony is necessary to establish that the negligence of a health care provider "has some causal connection with the injury except where the want of skill or lack of care is so apparent as to require only common knowledge and experience to understand and judge it." *Tillman by Tillman v. Elrod,* 897 S.W.2d 116, 118 (Mo.App.1995). " 'When a party relies on expert testimony to provide evidence as to causation when there are two or more possible causes, that testimony must be given to a reasonable degree of certainty.' " *Baker,* 950 S.W.2d at 646 (*quoting Tompkins v. Cervantes,* 917 S.W.2d 186, 189 (Mo.App.1996)). " 'When an expert merely testifies that a given action or failure to act "might" or "could have" yielded a given result, though other causes are possible, such testimony is devoid of evidentiary value.' " *Id.* (*quoting Tompkins,* 917 S.W.2d at 189). Here, given the appellants' allegations in their petition, expert medical testimony was obviously required to establish the requisite elements of their wrongful death claims.

■ In order to make a *prima facie* case for summary judgment, the respondents, in their motions for summary judgment, alleged facts which they asserted were undisputed and either negated the requisite elements of the appellants' wrongful death claims, including causation, or demonstrated that they could not be proven. In order to make a case for summary judgment on the issue of causation, the appellants relied on the deposition testimony of the appellants' own medical expert, Dr. Huber, who testified, in pertinent part:

Q. And that's because you are not able to state within a reasonable degree of medical certainty the cause of death of Mr. Super, are you?

A. I don't believe that's true.

Q. What is your opinion, based upon a reasonable degree of medical certainty, as to the cause of death of Mr. Super?

A. Based upon the autopsy results, which I reviewed, I believe that Mr. Super's approximate cause of death was his liver disease; namely, cirrhosis of the liver.

Q. So is it your opinion, based upon a reasonable degree of medical certainty, based upon all the information that you have reviewed in this case that the cause of death of Mr. Super was cirrhosis of the liver?

A. And subsequent complications thereof, yes.

Q. So I want to be specific and I want to make sure that I'm understanding you. Based upon all the information that you reviewed in connection with your review of this case, it is your opinion, based upon a reasonable degree of medical certainty, that the cause of death of Mr. Super was cirrhosis of the liver and com-

plications relating and stemming therefrom?

A. That's correct.

...

Q. You would agree with me, would you not, that the most likely cause of Mr. Super's cirrhosis was chronic active hepatitis based upon a reasonable degree of medical certainty?

A. Yes.

...

Q. Okay. You mentioned specifically that the findings that relates to the liver. Did you see any evidence of macronodular cirrhosis on autopsy?

A. Yes.

Q. Would you agree with me that macronodular cirrhosis is evidence of liver disease which [has] been going on for a long period of time, doesn't develop within a matter of months or even a year?

A. Yes.

...

Q. It is your opinion, is it not, based upon a reasonable degree of medical certainty that INH does not cause cirrhosis of the liver?

A. That is correct.

...

Q. It's certainly not your opinion, is it, that the administration of INH would aggravate chronic Hepatitis C?

A. It is my opinion that it would.

Q. It is your opinion that it would?

A. Yes.

...

Q. That's right. So it would follow then, would it not, that you can't say with reasonable medical certainty that any specific act done by Dr. White caused Mr. Super to die in June, would you agree with that?

A. I have to think about this. My answer to your question has to be that I cannot, because of lapses here in follow up, tell that — I can't tell you what the ongoing medical problem was the day that he came in. Okay? There was no laboratory data to support the argument either way.

Q. In other words, you can't make an opinion to a reasonable medical certainty tying Mr. Super's death to any account by Dr. White, is that correct? Is that what you are saying?

A. My answer is that it is both possible and not possible that his starting the INH led to his death.

Q. And I understand that. And I guess what I'm asking is we have — in lawsuits we deal with proof as opposed to possibilities. And I'm asking you isn't it correct to say that while you believe it may be possible, that you can't testify under oath with reasonable medical certainty that an act that Dr. White did before January of 1994 caused Mr. Super to die in June of 1995 ... January of '95 to June of '95?

A. I agree.

Viewed in a light most favorable to the appellants, Dr. Huber's deposition testimony established that, to a reasonable degree of medical certainty, the decedent's death was due to long-term cirrhosis of the liver and complications relating to and stemming therefrom, which resulted from the pre-existing disease of chronic active Hepatitis C. It also established that, although the administration of INH could "aggravate chronic Hepatitis C," it could not cause cirrhosis of the liver. It further established that, although it was "possible" that the starting of the INH led to the decedent's death, it was not possible to determine, to a reasonable degree of medical certainty, that it did. At best, from the appellants' perspective, their medical expert's testimony would show that the respondents' actions or inactions, with respect to the administration of INH, may have accelerated the decedent's death from cirrhosis of the liver, but would not satisfy the "but for" test to succeed on a wrongful death claim, that the respondents' actions or inactions caused or contributed to cause

the decedent's death. *Baker*, 950 S.W.2d at 646. An action cannot be brought under the wrongful death statute, § 537.080, where the cause of death was merely accelerated. *Morton*, 904 S.W.2d at 16–17 (citing *Wollen v. DePaul Health Ctr.*, 828 S.W.2d 681, 681–83 (Mo. *banc* 1992)). As such, the respondents made a *prima facie* case for summary judgment on the appellants' claims for wrongful death by alleging facts which demonstrated that the appellants could not establish with expert medical testimony that the alleged negligence of the respondents caused or contributed to cause the decedent's death. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 381.

Once a *prima facie* case is made for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the party's pleading, but the response, by affidavits or as otherwise provided in this Rule 74.04, shall set forth specific facts showing that there is a genuine issue for trial." Rule 74.04(e). In his or her response, the non-movant is required "to show—by affidavit, depositions, answers to interrogatories, or admissions on file—that one or more of the material facts shown by the movant to be above any genuine dispute is, in fact, genuinely disputed." *ITT Commercial Fin. Corp.*, 854 S.W.2d at 381. If such a showing is not made by the non-movant, judgment is proper for the movant. *Id.* at 382. A "genuine issue" exists where the record contains competent evidence of "two plausible, but contradictory, accounts of the essential facts." *Id.* "A 'genuine issue' is a dispute that is real, not merely argumentative, imaginary or frivolous." *Id.*

In their response to the respondents' motions for summary judgment, specifically as to the allegations regarding the inability of the appellants to establish a causal connection between the respondents' alleged negligence and the decedent's death,

the appellants continued to rely solely on the deposition testimony of Dr. Huber and the reasonable inferences drawn therefrom.[4] Inasmuch as we found, *supra*, that this testimony was insufficient to establish the necessary element of causation with expert medical testimony, as required, it is also insufficient to establish a genuine dispute of material facts as to this issue so as to allow the appellants to survive summary judgment for the respondents.

Points I and II denied.

### Conclusion

The judgment of the circuit court for the respondents on their motions for summary judgment as to the appellants' claims for wrongful death is affirmed.

HOWARD and HOLLIGER, JJ., concur.

---

4. Although not made a part of their response to the respondents' summary judgment motions, as required by Rule 74.04, the appellants did attach an affidavit from Dr. Huber to their "motion for reconsideration" of the trial court's grant of summary judgment.

Even if we were to consider the affidavit in determining whether the trial court was correct in granting summary judgment to the respondents, it was insufficient to establish a genuine dispute of material facts as to the issue of causation.