

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FIVE

| | | |
|---|---|---|
| RUTH MICKELS, ET AL., | ) | No. ED101147 |
| | ) | |
| Plaintiffs/Appellants, | ) | Appeal from the Circuit Court of |
| | ) | Marion County |
| vs. | ) | |
| | ) | Honorable Rachel L. Bringer Shepherd |
| RAMAN DANRAD, M.D., | ) | |
| | ) | Filed: December 23, 2014 |
| Defendant/Respondent. | ) | |

## I. INTRODUCTION

Plaintiffs Ruth Mickels, Joseph Mickels, Jr., Brittany Mickels, and Jennifer Unglesbee appeal the Circuit Court of Marion County's grant of summary judgment in favor of defendant Dr. Raman Danrad. The plaintiffs allege that Dr. Danrad's negligent failure to diagnose a terminal brain tumor in Joseph Mickels, Sr. ("Mr. Mickels"), caused his wrongful death. On appeal, the plaintiffs argue that the trial court erred by granting summary judgment in favor of Dr. Danrad, because the summary judgment record shows that Mr. Mickels would have lived approximately six months longer if Dr. Danrad had timely diagnosed his tumor. We affirm the trial court's judgment.

## II. FACTS

Viewed in a light most favorable to the plaintiffs, the following facts led to the instant suit. On December 8, 2008, Mr. Mickels visited the Hannibal Clinic in Hannibal, Missouri,

complaining of numbness and tingling in his left arm and leg, blurred vision, and headaches. A neurologic evaluation was conducted, including an MRI study of Mr. Mickels's brain. On December 12, 2008, radiologist Dr. Raman Danrad reviewed the results of the MRI study. He did not diagnose a tumor.

On February 17, 2009, approximately two months after the initial MRI study, Mr. Mickels arrived at Hannibal Regional Hospital suffering from an altered mental status. A CT study of Mr. Mickels's brain was conducted and Dr. Danrad reviewed the results. Dr. Danrad diagnosed Mr. Mickels with a terminal brain tumor. Despite immediate surgery and various other treatments, Mr. Mickels passed away on June 12, 2009, less than four months after the tumor was diagnosed. Mr. Mickels's treating oncologist, Dr. Carl Freter, later explained about the tumor:

> [It] was incurable when it was found and it would have been incurable at the time . . . [of] the original [MRI study] . . . . [However] it is more likely than not that if [the tumor] had been discovered earlier . . . [Mr. Mickels] would have lived an additional six months on average.

On June 7, 2012, the plaintiffs brought the instant wrongful death claim against Dr. Danrad. In response, Dr. Danrad moved for summary judgment. After a hearing, the trial court granted summary judgment in favor of Dr. Danrad. This appeal follows.

### III. STANDARD OF REVIEW

Our review of summary judgment is de novo. *Manner v. Schiermeier*, 393 S.W.3d 58, 61-62 (Mo. banc 2013). "The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially." *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We "review[] the record in a light most favorable to the party against whom judgment was entered, without deference to the trial court's findings, and

2

accord[] the non-movant 'the benefit of all reasonable inferences from the record.'" *Manner*, 393 S.W.3d at 61-62 (quoting *ITT Commercial Fin. Corp.*, 854 S.W.2d at 376). "Summary judgment is appropriate where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law."[1] *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 818 (Mo. banc 2007).

## IV. DISCUSSION

In their sole point on appeal, the plaintiffs argue that the trial court erred by granting summary judgment in favor of Dr. Danrad on their claim for wrongful death, because the summary judgment record shows that Mr. Mickels would have lived approximately six months longer if Dr. Danrad had timely diagnosed his terminal brain tumor. In response, Dr. Danrad contends that under Missouri law a wrongful death claim requires the plaintiffs to establish that Mr. Mickels would not have died but for Dr. Danrad's negligence, not that he may have lived a few months longer. Because it is undisputed that Mr. Mickels's tumor was terminal and would have caused his death regardless of any alleged negligence, Dr. Danrad contends that the plaintiffs' wrongful death claim fails as a matter of law.

Wrongful death in Missouri is a statutory action governed by section 537.080.1, R.S.Mo. (2000). Section 537.080.1 provides:

> Whenever the death of a person results from any act, conduct, occurrence, transaction, or circumstance which, if death had not ensued, would have entitled such person to recover damages in respect thereof, the person . . . which would have been liable if death had not ensued shall be liable in an action for damages, notwithstanding the death of the person injured . . . .

To prevail in the instant action based on medical negligence, the plaintiffs must establish three elements: (1) Dr. Danrad failed to meet a required medical standard of care; (2) Dr. Danrad's

---

[1] The trial court failed to explain why it granted summary judgment. Therefore, we presume that the trial court did so based on the theory raised by Dr. Danrad in his motion for summary judgment. *See Cent. Mo. Elec. Co-op. v. Balke*, 119 S.W.3d 627, 635 (Mo. App. W.D. 2003).

acts or omissions were performed negligently; and (3) Dr. Danrad's acts or omissions caused Mr. Mickels's death. *See Sundermeyer v. SSM Reg'l Health Servs.*, 271 S.W.3d 552, 554 (Mo. banc 2008); *Watson v. Tenet Healthsystem SL, Inc.*, 304 S.W.3d 236, 240 (Mo. App. E.D. 2009).

The first two elements are not at issue in this appeal, and the parties dispute only the issue of causation. To withstand summary judgment on the issue of causation, the plaintiffs "must demonstrate that there are genuine issues of material fact regarding whether [Dr. Danrad's] conduct was both the cause in fact and the proximate, or legal, cause of [Mr. Mickels's] death." *Sundermeyer*, 271 S.W.3d at 554. Specifically, the plaintiffs "must establish that, but for [Dr. Danrad's] actions or inactions, [Mr. Mickels] would not have died." *Kivland v. Columbia Orthopaedic Grp., LLP*, 331 S.W.3d 299, 305 (Mo. banc 2011) (quoting *Sundermeyer*, 271 S.W.3d at 554); *Watson*, 304 S.W.3d at 240; *Super v. White*, 18 S.W.3d 511, 516 (Mo. App. W.D. 2000); *Baker v. Guzon*, 950 S.W.2d 635, 644 (Mo. App. E.D. 1997); *Morton v. Mutchnick*, 904 S.W.2d 14, 17 (Mo. App. W.D. 1995). "This requirement exists because the term 'but for' refers to an absolute minimum for causation; it is merely causation in fact." *Super*, 18 S.W.3d at 516 (quoting *Baker*, 950 S.W.2d at 644). Accordingly, an action for wrongful death cannot be brought where the alleged medical negligence merely accelerated death from a terminal illness. *See id.* at 518 ("An action cannot be brought under the wrongful death statute, § 537.080, where the cause of death was merely accelerated."); *Morton*, 904 S.W.2d at 16-17 (explaining negligent failure to diagnose terminal illness does not support wrongful death action, because "[t]he harm that the plaintiffs claim was suffered was not the loss of life, but rather, a shortening of life").

Here, the plaintiffs allege only that Dr. Danrad's negligent failure to diagnose Mr. Mickels's terminal brain tumor accelerated his death. As Mr. Mickels's treating oncologist, Dr. Freter, explained in his deposition, the tumor was "essentially as aggressive as they come." It

4

"was incurable when it was found and it would have been incurable at the time . . . [of] the original [MRI study]." Though earlier "treatment would likely have been somewhat more effective [in extending Mr. Mickels's life expectancy] . . . . it would not have made an enormous difference." "We are not talking about decades or years. We are talking about a matter of months and . . . we are talking a matter of six months or so on the average under the circumstances."

Consistent with Dr. Freter's foregoing testimony, the plaintiffs' case hinges on the allegation that but for Dr. Danrad's medical negligence, Mr. Mickels would have lived an additional six months. However, to withstand summary judgment, the plaintiffs were required to allege that "but for [Dr. Danrad's] actions or inactions, [Mr. Mickels] *would not have died*." *Kivland*, 331 S.W.3d at 305 (emphasis added) (quoting *Sundermeyer*, 271 S.W.3d at 554). Because the summary judgment record shows that Mr. Mickels's brain tumor was terminal and would have caused his death regardless of Dr. Danrad's alleged medical negligence, the plaintiffs' claim fails as a matter of law. Mr. Mickels's terminal illness defeats the element of causation.[2] *See Super*, 18 S.W.3d at 518-19 (holding wrongful death claim failed, because patient's death caused by long-term cirrhosis of liver and hepatitis C, even though doctor's administration of drug six months prior to death may have aggravated hepatitis and accelerated

---

[2] We do not mean to suggest there is no remedy for Mr. Mickels's allegedly shortened life. The plaintiffs may have had an action for lost chance of survival. "The purpose of a lost chance of recovery or survival claim is to address the harm that a patient suffers 'when the doctor fails to diagnose or adequately treat a serious injury or disease.'" *Kivland*, 331 S.W.3d at 305 (quoting *Wollen v. DePaul Health Ctr.*, 828 S.W.2d 681, 686 (Mo. banc 1992)). While the wrongful death plaintiff "must establish that, but for the defendant's actions or inactions, the patient would not have died," *id.* (quoting *Sundermeyer*, 271 S.W.3d at 554), it is understood in a lost chance of survival claim that "it is impossible to establish the patient would have recovered or survived but for the defendant's alleged failure to properly diagnose or treat," *id.* (quoting *Markham v. Fajatin*, 325 S.W.3d 455, 460 (Mo. App. E.D. 2010)). Here, the plaintiffs' expert Dr. Freter testified that Mr. Mickels lost a statistically significant chance to survive beyond June 12, 2009. *See Wollen*, 828 S.W.2d at 685 n.3 (explaining "action will be limited to those cases in which the chance of recovery lost was sizeable enough to be material . . . [and] statistically significant within applicable statistical standards"). They also allege he would have lived an additional six months. *See Downey v. Univ. Internists of St. Louis, Inc.*, 154 S.W.3d 339, 344 (Mo. App. E.D. 2004) (noting that reduced life expectancy "might operate to reduce . . . damages, but not to eliminate damages entirely;" otherwise, law would "value [decedent's] life at nothing"); *but cf. Morton*, 904 S.W.2d at 17 (stating plaintiff could not recover for lost chance of survival, where decedent's "life [would have been] extended by an unknown period of time until his ultimate death as a result of AIDS-related illness").

5

death); *Morton*, 904 S.W.2d at 17 (holding wrongful death claim failed, because patient's death caused by complications from advanced-stage AIDS, even though doctor's failure to diagnose condition nine months prior to death may have accelerated death); *see generally* Michael P. Sullivan, Annotation, *Recovery in Death Action for Failure to Diagnose Incurable Disease which Caused Death*, 64 A.L.R. 4th 1232 (1988) ("Generally, the courts have held that the incurability of a disease will absolutely preclude a finding of proximate cause in a wrongful death action [based on medical negligence] . . . .").

Nevertheless, the plaintiffs cite the cases of *De Maet v. Fidelity Storage, Packing & Moving Co.*, 132 S.W. 732 (Mo. 1910), and *Strode v. St. Louis Transit Co.*, 95 S.W. 851 (Mo. banc 1906), for the proposition that a wrongful death claim is actionable even though the decedent shortly would have died from a terminal illness regardless of the defendant's negligence. Insofar as this proposition applies to claims unrelated to medical negligence, we agree. For instance, a "defendant who murders a terminally ill patient . . . . is, by definition, the competent force that brings about h[er] death." *Morton*, 904 S.W.2d at 16. Accordingly, in *De Maet*, 132 S.W. at 733, the Missouri Supreme Court concluded that a defendant who ran over the decedent with a horse-drawn buggy could be held liable for wrongful death, even though "there were certain organic troubles which would have shortly terminated [the decedent's] life." Likewise, in *Strode*, 95 S.W. at 851-52, the Court observed that a defendant who hit the decedent with a streetcar could be held liable for wrongful death, even if the decedent soon would have died of tuberculosis anyway. As is evident from the foregoing discussion, however, in a wrongful death claim based on medical negligence, terminal illness in the decedent defeats the element of causation. *Super*, 18 S.W.3d at 519; *Morton*, 904 S.W.2d at 17.

Additionally, the plaintiffs cite the case of *Collins v. Hertenstein*, 90 S.W.3d 87 (Mo. App. W.D. 2002), for their assertion that "a tortfeasor's negligence can contribute to cause death, even though the decedent would have died at a later point in time in the absence of negligence." Again, this case is distinguishable from the plaintiffs' instant claim of medical negligence in failing to diagnose a terminal illness. First, in *Collins*, the decedent had no terminal illness that would have caused his death regardless of the defendant's actions. Instead, *Collins* involved the tragic shooting death by three police officers of an apparently healthy young boy. *Id.* at 93-94. Second, the legal question in *Collins* was entirely different than that presented here. *Collins* dealt with whether the actions of the three officers in shooting the boy could combine to form a single, indivisible injury for the purposes of joint and several liability.[3] *Id.* at 94-96. On appeal here, however, the plaintiffs do not raise the issue of joint and several liability, or claim that Dr. Danrad's negligence combined with the negligence of anyone else to form a single, indivisible injury for which all parties should be held responsible. In fact, despite naming six defendants in their initial petition, the plaintiffs now wish to hold only Dr. Danrad liable for Mr. Mickels's death. Thus, *Collins* does not aid the plaintiffs' case.

Accepting as true all facts alleged by the nonmoving party, the plaintiffs cannot succeed on their claim for wrongful death based on medical negligence. To establish the requisite element of causation, they were required to allege that Mr. Mickels would not have died but for Dr. Danrad's failure to diagnose his brain tumor. *See Kivland*, 331 S.W.3d at 305. They alleged instead that Dr. Danrad's negligence only accelerated Mr. Mickels's inevitable death from the

---

[3] In *Collins*, the evidence showed that the three officers fired their guns simultaneously at the son, and each struck him with a single bullet. *Id.* at 94-95. Two of the bullets caused wounds that were each alone sufficient to cause death. *Id.* The third bullet hit the son in the arm, causing only bleeding. *Id.* at 95. Because "bleeding was a large part of the mechanism of [the son's] death," the court held "the jury [had] a sufficient basis for concluding that [the third] gunshot contributed to cause [the son's] death," and that the simultaneous gunshots constituted "a single, indivisible injury" for which all three officers could be held liable. *Id.* at 96.

7

tumor by six months. *See Super*, 18 S.W.3d at 519 (holding wrongful death claim based on medical negligence does not lie where defendant's actions merely accelerated death from terminal illness); *Morton*, 904 S.W.2d at 17 (same). Because the undisputed facts show that Mr. Mickels's brain tumor was terminal and would have caused his death regardless of Dr. Danrad's alleged medical negligence, the plaintiffs cannot establish the requisite element of causation and their claim fails as a matter of law.

## V. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

_____
Lisa S. Van Amburg, Judge


Angela T. Quigless, C.J. and
Roy L. Richter, J. concur.

8